Reed v. Reed.

## JOHN A. REED ET AL.

### v.

## ANDREW J. REED ET AL.

*Marriage Settlement—Alleged Trust Fund—Bill in Equity by Children against Father to Secure Accounting for Fund Alleged to Have Been Held in Trust for First Wife.*

Complainants are children of appellee by a former wife, who died intestate. Prior to his first wife's death she became entitled, under the will of her father, to a distributive share of his personal estate. She personally settled with the executor of her father's estate for this share, by receiving from him a note given by her husband as part of the purchase price of their home farm, purchased by him some time before, and having indorsed upon another similar note the balance of the share due her. The note paid in full she turned over to her husband. The husband subsequently paid out of his own means the balance of the other note. Subsequently the wife, with her husband, sold land devised to her by her father, and the proceeds were chiefly used for household expenses and by the husband in his business. *Held:* That appellee, there being no evidence of an express trust, was not chargeable as a trustee of the funds or property received from his wife for the benefit of her or her children; and that even if the wife had been presumed to have purchased the notes, which were secured by a purchase money lien on the home farm, to protect her dower right, and she were to be considered as subrogated to the creditor's security, that lien could not be enforced under a bill seeking to charge the husband as trustee.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Morgan County; the Hon. C. EPLER, Judge, presiding.

Mr. OWEN P. THOMPSON, for appellants.

If the defendant, Reed, had received in the same way this amount of money from a stranger, would any one question the right of such person to hold him liable as trustee ? The rights of Mrs. Reed, and consequently her heirs, can be enforced under the law, as it now exists, the same as if she and her husband had been total strangers. Under the married woman's act of 1861, all the rights of the husband in and to the separate estate of the wife are swept away, and the wife may own, hold, possess and enjoy such estate precisely as though she were sole. As to such estate and her relations thereto she has no husband.

In the case of Patten v. Patten, 75 Ill. 446, the court held that if the husband receipts for and manages his wife's separate estate, with her consent, the presumption is that he does so in the character of agent, and it will not, in deference to marital legal rights, become his property. If the husband claim, as gift, the burden is upon him to establish his claim by evidence. See Tomlinson v. Matthews, 98 Ill. 178; 2 Perry on Trusts, Sec. 666, third edition.

As to the Kirkman land, the testimony of Reed is that it was purchased with what he called the "general fund." The general fund, according to his testimony, was made up of his wife's money and his own, commingled together, the larger portion of it being his wife's. Here, too, the evidence is ample to show a resulting trust. His wife's money was used in purchasing the land, and the deed was taken in his name. Our Supreme Court has held that the wife has an equitable interest in the property to the extent of the money furnished. Haines v. Haines, 54 Ill. 74; see, also, Seaman v. Cook, 14 Ill. 501; Ward v. Armstrong, 84 Ill. 151; Perry on Trusts, Sec. 128; Persch v. Quiggle, 57 Pa. St. 247; Russell v. Jackson, 10 Hare, 209.

The funds which went toward the payment of the purchase price of the Gallagher farm were paid after the deed was made,

and consequently no resulting trust can be said to exist as to those lands. But we do insist that in equity the $4,870.51 of Mrs. Reed's money, that went into this farm, and the benefits of it received by Reed, should be held to be a lien on the property, in the nature of a vendor's lien, and should be held subject to sale to reimburse the trust fund. Wallace v. McCullough, 1 Rich. Ch. 426 ; Perry on Trusts, Sec. 128.

All of the money which Reed says his wife allowed him to use and which is not a trust impressed upon the lands now held by Reed, is nevertheless money he holds in trust. The name by which the trust is to be known is wholly immaterial, but we have used the term constructive trust as applicable to this fund. The authors of the leading text books on the subject of trusts, viz., Story, Perry and Pomeroy, do not use the same name for the same character of trust, but all agree that where one possesses himself of trust property, or who has defrauded another of his estate by concealment or fraudulent practices, even though no fraud was intended at commencement of the trust relation, is to be held as a trustee by construction or operation of law, and the parties beneficially entitled have the same rights and remedies against him that they would be entitled to as against an express trustee who had fraudulently committed a breach of the trust. Perry on Trusts, Sec. 166 ; Pomeroy's Eq. Jur., Sec. 1044 ; Thompson v. Thompson, 16 Wis. 91; Pillow v. Brown, 26 Ark. 240 ; McLane v. Johnson, 43 Vt. 48.

Messrs. BROWN & KIRBY, for appellees.

We respectfully insist that the presumption of law is that these notes were the gift of Susan F. Reed to Andrew J. Reed, because of her love and affection for him, and in support of this proposition we cite the following cases : Lux v. Hoff, 47 Ill. 425 ; Story's Equity Jurisprudence, Vol. 2, Secs. 1202 and 1203 ; Pomeroy's Equity Jurisprudence, Vol. 2, Sec. 1041 ; Sidmouth v. Sidmouth, 2 Beavan, 447; Maxwell v. Maxwell, 109 Ill. 588 ; Temple v. Williams, 4 Iredell's Equity Rep. 39

PLEASANTS, P. J. Appellants are children of appellee

Andrew J. Reed, by a former wife, who died intestate December 15, 1884. In January, 1886, he married his present wife, after conveying certain lands to trustees for her use, in pursuance of an ante-nuptial agreement. Appellants filed the bill herein, averring that he purchased these and other lands described, amounting to 380 acres in Morgan county, with means of their mother derived from her father's estate and placed in his hands at different times for safe keeping for her and her children, with the understanding between them that it was to be held by him in trust for her, and that in the event of her death he was, as trustee, to account for and pay it over to her children; and praying that he be required to convey said lands to said children, or to account for and pay over to them all of said trust fund, with the rents, profits and interest accrued thereon. Appellee's wife, the trustees of the land conveyed for her use, and certain mortgagees of other portions are charged with notice of complainant's rights and made parties defendant.

Appellee Reed, by his answer, denied the alleged trust, claiming that the money he received was given to him abso-. lutely by her, and also set up the statutes of frauds and of limitations. The other defendants denied all notice of complainant's claims before they took their respective deeds or mortgages and that they were made without valuable consideration.

On final hearing upon the proofs taken under these pleadings, the court dismissed the bill at complainants' costs, and they appealed. Without now undertaking a full review of the evidence or the argument for appellants, we are of opinion, upon a full consideration of both, that this decree should be affirmed, upon the ground that there was no sufficient proof of any trust reposed in appellee Reed in connection with the moneys in question.

There was none whatever of any such understanding as was alleged. The nearest approach made to it was by the testimony of two of the complainants, that they heard their mother say, long after the money had been received or applied, and in the absence of their father, that some of it had

gone into the home place, and that the children ought to have a share of it, and that she wanted them to have it; and the statement of one Mrs. Hembraugh, that her father, in talking with her about his intention to marry again, said he wanted to know what they thought about it; that she told him if he would wait long enough it would make no difference to them, and he said, referring to the home property, that before he married he would make satisfactory settlement with the children; which last statement he denied. This is not urged as satisfactory proof of the alleged understanding between him and his deceased wife. The reliance is rather upon a supposed resulting or constructive trust.

It appears that in October, 1865, she applied upon two promissory notes made by him and then belonging to her father's estate, the sum of $4,870.51, coming to her from that estate. It was paid to her by the executor, by surrendering to her one, receipted as paid in full, on which was due $3,024.33, and indorsing on the other, by her direction, a credit of the balance, $1,797.48. These notes had been given on the 18th of February, 1858, to W. G. Gallagher, in part payment for the home farm then deeded to him, and were assigned to her father. The one so paid she delivered to her husband, and he afterward paid with his own means the balance remaining due on the other and took it up. It does not appear that appellee was present or had anything to do with this arrangement and transaction with the executor, or that he requested, suggested or expected it. The money having been thus voluntarily applied by her, and toward payment for land long before purchased by and conveyed to her husband in his own name, it is not claimed that a resulting trust would arise thereon as to that land; but counsel "insist that in equity it should be held to create a lien upon it, in the nature of a vendor's lien." On what principle it should be so held is not suggested, and we think of none unless it be that the application of this money was not made by her voluntarily, but to protect her contingent right of dower in the premises; and therefore she should be subrogated to the creditor's security, which was a vendor's lien reserved by the deed; for it is clear she could not make her husband her debtor without

his consent by the voluntary payment of his debt to another. But if the facts showed a right to such subrogation, which we do not concede, this is not a bill to enforce a lien of any kind, and however clear the right to such relief it could not be properly granted in this case.

The responsibilities of a trustee, whatever be the kind of trust, are either contractual or penal. In other words, they arise only out of some act of the party to be charged, which expresses or implies his acceptance of them, or some default, fraud or wrong which makes it equitable that he should bear them without regard to his consent. But all the acts out of which any trust in appellee in connection with this money is claimed to have arisen, were shown to have been those of his wife alone, without so much to implicate appellee as his consent to or knowledge of them. Of themselves these facts indicate that the money so applied by herself was absolutely given to him or for his benefit. They relieved him from the necessity of making any proof to that effect. He had no presumption of agency on his part to rebut, as he would in case of a showing simply that he collected or received it as hers, though with her consent, from a debtor or custodian. Had she been any other than his wife the law would presume from these facts that it was a gift; and for any return therefor she must look to his sentiments and not to any obligation that a court can enforce. The distinction between receiving it from a third party, as hers, and receiving it from herself, bears on the pertinency of the principal authorities cited. Patten v. Patten, 75 Ill. 446; Tomlinson v. Matthews, 98 Id. 178; Perry on Trusts (3d Ed.), Sec. 666.

It further appears that on May 8, 1867, Mrs. Reed with her husband conveyed certain land devised to her by her father to her brother, for $7,000, of which $1,000 (less the amount of a succession tax deducted) was paid in cash, and the residue in a note for $2,000 at sixty or ninety days, and another for $4,000 at five years. The cash was paid to her, and the notes were made payable and delivered to her. What disposition was made of this money and these notes was shown only by the testimony of Mr. Reed himself, who was called as a witness by the complainants. He stated that of the cash he paid

Reed v. Reed.

$500, by her direction, to the Church Extension Society, and the rest she expended herself in furnishing their house and getting other things she thought necessary. The $2,000 note was indorsed and delivered by her to him. He left it at the bank, drew the money when it was paid, and put it into what he called the "general fund," that is, "with what he made on the farm and what she got," which fund they used for whatever they needed; and that he used this money, as she knew he would, in providing for the family and in his business, but just how, particularly, he could not remember. The other note she indorsed to the order of Robert Morrison, and delivered to her husband to be used by him, together with money of his own, to pay said Morrison for a lot of cattle purchased of him during that fall. Buying, feeding and selling cattle was his business. He sold that lot at a considerable loss, but with what he got for it he bought another, and so on. When first examined for the complainants he said his recollection then was that the money he got for the second bunch, after the Morrison lot, was used, with other means, in the purchase of a certain piece of land described—taking the deed to himself—which land he still holds. Afterward he corrected that statement, and having refreshed his memory from the deed and from his bank book and other papers, stated that he paid for that land before he realized on the sale of that bunch.

But whether the proceeds of this $4,000 note or any part of them went into that land or not we think is immaterial, because it does not appear to us that they were received by him upon any trust whatever. The note was hers, and so made that she could control it and dispose of it as she should think proper. She could withhold it from her husband, or give it or loan it, or intrust it to him for her own or any other lawful use. When she indorsed it she knew the use to which it was to be put was speculative and hazardous, and that knowledge raises a presumption that it was not delivered to him in trust, to be safely kept and returned. Knowing it, she could not have complained of any loss suffered by the trade; but we apprehend, that under such a trust as is charged in the bill, her husband would have been liable for all loss, and also

accountable for all profit by it. We think it apparent that no such liability was contemplated in this transaction. Nor is there an intimation in the bill or testimony that he was her agent, to do business with her money for her, and at her risk of legitimate loss in such business. She herself delivered the note to him, to be used in a particular trade, as of his own proper business, for the benefit of himself and the family, and subject to the risks of the trade, precisely like the other money he put into it.

Nor was there about it any of the *indicia* of a loan. No security or evidence of indebtedness was taken, nor anything said or done to distinguish it from an absolute gift—as in the case of the moneys first above mentioned—coming from the executor of her father's will. She herself having possession and control of this note, applied it to his use in his business. The application of those moneys indicates her intention with respect to this. It came to her as her separate estate, but she did not intend to keep it as such. She voluntarily divested herself of it, and incorporated it in his. She lived with him as his wife for sixteen years after the delivery of these notes to him, and until her death, and yet there is no evidence that she ever asked him for an account, or in any act or word treated him as her trustee, agent or debtor, but always and only as her husband. And although the statute has abrogated the common law rights of the husband in respect of the property of the wife, nevertheless, as the court said in Patten v. Patten, *supra*, "the relation of the parties may be considered with reference to the weight to be given or inference drawn from their conduct and dealings with regard to her separate property."

In addition to the circumstances shown, we have the positive testimony of the appellee, called as a witness by appellants, that none of this money was received by him under any trust, to account for or return it to his wife or her children, but all was given by her to him freely and absolutely; and his testimony stands without contradiction. Such a trust as is here charged should be established by clear and satisfactory proof.

We think the decree dismissing the bill was right, and it will be affirmed.                    *Decree affirmed.*